SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x

Application of

THE MAMMA MIA! USA TOUR 2
LIMITED PARTNERSHIP, a New York
Limited Partnership,

            Petitioner,

Pursuant to NY CPLR § 7503 and
The United States Arbitration Act, 9 U.S.C. § 1 et seq.
For An Order and Judgment Compelling Respondents
To Arbitrate and Enjoining Respondents From
Pursuing A Civil Action,

   -against-

THEATRICAL ARTS INTERNATIONAL, INC. and
THEATRICAL ARTS INTERNATIONAL
FOUNDATION, California corporations,

            Respondents.

------------------------------------------------x

Index No. 602724/06

**VERIFIED PETITION TO
COMPEL ARBITRATION
& ENJOIN RESPONDENTS
FROM LITIGATION**

Petitioner Mamma Mia! USA Tour 2 Limited Partnership ("Mamma Mia!"), through

counsel, petitions the Court, pursuant New York Civil Practice Law and Rules ("CPLR") §§ 401

et seq. and 7501 et seq., and the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., to compel

respondents to arbitrate a claim for lost ticket revenues of approximately $103,719.05 in

connection with a road show production of the musical "Mamma Mia!" in accordance with a

written arbitration agreement and to enjoin respondent Theatrical Arts International, Inc. from

proceeding with a civil action commenced by it against Petitioner in a California state court on

May 31, 2006 -- but not purportedly served upon Petitioner until August 2, 2006 -- which seeks

to enjoin Petitioner from proceeding with arbitration and a determination on the merits of the

parties' dispute, contrary to their arbitration agreement, for the following reasons:

### Jurisdiction

1.    This case concerns a contract and transaction involving interstate commerce and a written agreement to arbitrate any disputes, which are subject to the terms and obligations of the United States Arbitration Act, 9 U.S.C. §§ 1, 2, and 4. This Court has jurisdiction under CPLR §§ 302(a), 7501, 7502, and 7503 because Respondents transacted business with Petitioner in the state and signed an arbitration agreement providing for arbitration of the parties' disputes in Manhattan, New York.

### The Parties

2.    Claimant Mamma Mia! USA Tour 2 Limited Partnership, a/k/a Mamma Mia! USA Tour 2, LP ("Mamma Mia!") is a New York limited partnership, with its principal place of business in New York City, New York, whose partners are citizens of the states of New York and Delaware and are subjects of the foreign states of Sweden, the United Kingdom, Panama, and Canada. Mamma Mia! is the producer of a road show production of the popular musical "Mamma Mia!" (the "Show") which has been running on Broadway in New York City since October 2001, as well in various other cities, after it was originally presented in London, England. Petitioner has presented the "Mamma Mia!" show in approximately seventy-five (75) different cities in various states throughout the United States.

3.    Respondent Theatrical Arts International, Inc., a California corporation, and/or Theatrical Arts International Foundation, a California corporation (collectively "Theatrical Arts") are presenters of theatrical productions at the California Theatre in San Bernadino, California (the "Theatre"), where their principal places of business are located. Respondents executed the Booking Agreement at issue as "Theatrical Arts International" without distinguishing between the two entities.

- 2 -

## Agreement of the Parties-Including Written Arbitration Agreement

4.      Beginning in our around June 2003, Mamma Mia! and Theatrical Arts, through their respective booking agents The Booking Group and Harmony Artists, Inc., engaged in periodic negotiations for Theatrical Arts to present a one-week run of the Show at the Theatre. All dealings between the parties described herein were through their respective booking agents, unless otherwise stated.

5.      In negotiations with Respondents, Mamma Mia! insisted that its ticket prices were non-negotiable and that Theatrical Arts could not sell tickets for the Show at discounts, except as expressly agreed upon by Mamma Mia!, and advised Theatrical Arts that a competitor was interested in the Show. Theatrical Arts urged Mamma Mia! not to enter an agreement with the competitor and agreed to the ticket prices required by Mamma Mia!

6.      In or about September 2005, the parties agreed on the principal terms for presentation of the Show in the Theatre in February 2006, including the ticket prices required by Mamma Mia!, based upon an exchange of emails and other communications.

7.      On or about December 23, 2005, Mamma Mia! discovered that Theatrical Arts was already selling some tickets for the Show at prices below those specified by Mamma Mia! and previously agreed by Theatrical Arts. Mamma Mia! reluctantly agreed in January 2006 that Theatrical Arts could continue to sell tickets at those lower prices.

8.      On or about January 11, 2006, Mamma Mia! sent Theatrical Arts three execution copies of a Booking Agreement dated as of December 23, 2006, including Exhibit A, which set forth the agreed terms and conditions, including ticket prices, upon which Theatrical Arts was granted permission to present the Show at the Theatre during February 21-26, 2006 (the "Booking Agreement"), along with a document transfer sheet of instructions. True and correct

copies of the foregoing Booking Agreement and document transfer sheet are attached as Exhibit 1.

9.     The Booking Agreement provides for resolution of any disputes by arbitration. In pertinent part, the Booking Agreement, ¶ 17, provides that "[a]ny claims, dispute, or controversy arising out of or relating to this [booking] agreement shall be submitted to arbitration in Manhattan, New York before one arbitrator pursuant to the rules then applicable of the American Arbitration Association ..." and that "the prevailing party in the arbitration being entitled to all costs including reasonable attorney's fees."

10.     On or about February 7, 2006, Theatrical Arts' president Joseph Henson signed the Booking Agreement and returned it to Mamma Mia! by facsimile transmission, after making unauthorized interlineated changes to the Booking Agreement, including the addition of discounted ticket prices on Schedule A. Theatrical Arts made no changes to the arbitration provision in ¶ 17 of the Booking Agreement. A true and correct copy of the Booking Agreement as signed by Theatrical Arts is attached as Exhibit 2.

11.     On February 8, 2006, Mamma Mia! (through its booking agent) sent an email to Theatrical Arts' booking agent objecting to its unauthorized changes to the Booking Agreement, including discount ticket prices, contrary to the parties' prior agreement. A true and correct copy of this email is attached as Exhibit 3.

12.     On or about February 16, 2006, Mamma Mia!'s General Manager signed the Booking Agreement, after modifying the unauthorized changes by Theatrical Arts it to reflect the prior agreement of the parties, including omission of discounted ticket prices. A true and correct copy of the Booking Agreement as executed by Mamma Mia! is attached as Exhibit 4 hereto. Mamma Mia! made no changes to the arbitration provision in ¶ 17 of the Booking Agreement.

13.    Mamma Mia!'s Company Manager Bob Tevyaw reviewed and discussed the fully-executed Booking Agreement with Theatrical Arts on or about February 21, 2006 or soon thereafter.

### Mamma Mia! Presented the Show at Respondents' Theatre

14.    Theatrical Arts presented the Show at the Theatre between February 21-26, 2006. A true copy of the program for the Show at the Theatre is attached as Exhibit 5.

15.    On or about February 21, 2006, Theatrical Arts paid Mamma Mia! $367,500 for the guaranteed minimum fee of $375,000 (less withheld taxes) for Mamma Mia!'s presentation of the Show at the Theatre from February 21-26, 2006.

### Arbitrable Dispute Under the Agreement

16.    Under ¶ 4(A)(2) of the Booking Agreement, Theatrical Arts agreed to pay Mamma Mia! eighty percent (80%) of box office receipts, as defined in the agreement, based upon the agreed ticket prices.

17.    On February 22, 2006, Mamma Mia! notified Theatrical Arts that it had violated the parties' agreement by discounting tickets without authorization and possibly by issuing unauthorized complimentary tickets.

18.    Theatrical Arts responded that no additional sums were due to Mamma Mia! beyond the guaranteed minimum paid, despite the fact that Theatrical Arts sold numerous tickets to the Show at discounted prices, contrary to the parties' agreement.

19.    Mamma Mia! claims that Theatrical Arts' sale of tickets for the Show at prices below those authorized by Mamma Mia! and agreed to by Theatrical Arts was in breach of the parties' contract and the Booking Agreement.

20.     Mamma Mia! determined that it suffered damages from lost ticket revenues as a direct and proximate result of Theatrical Arts' breach of the parties' contract and the Booking Agreement in an amount not less than $103,719.05, after giving Theatrical Arts credit of $4,820.95 for certain expenses reimbursable under the Booking Agreement. Theatrical Arts denied Mamma Mia!'s claim.

21.     Between the beginning of March and the end of May 2006, counsel for the parties exchanged correspondence in an attempt to resolve their dispute, but were unable to do so.

### Mamma Mia!'s Demand for Arbitration

22.     On June 27, 2006, Mamma Mia! served Theatrical Arts with a Demand for Arbitration before the American Arbitration Association, pursuant to ¶ 17 of the Booking Agreement, and filed it with the AAA, with a cover letter dated June 27, 2006 to the AAA Vice President - Case Management Center. A true copy of the Demand for Arbitration and cover letter are attached as Exhibit 6.

23.     On July 6, 2006, the AAA acknowledge receipt of Mamma Mia!'s Demand for Arbitration, assigned it AAA Case No. 13 459 01 484 06, and advised that it would administer the demand under AAA's commercial arbitration rules.

### Theatrical Arts Repudiates Its Obligation to Arbitrate

24.     Theatrical Arts has not filed a response to Mamma Mia!'s Demand for Arbitration, which AAA rules deem a denial of the demand. AAA Commercial Arbitration Rule 4(c).

25.     On July 21, 2006, the AAA Case Manager held a telephone conference to discuss AAA procedures for the arbitration with undersigned counsel for Mamma Mia! and John G. Burgee, Esq., counsel for Theatrical Arts.

- 6 -

26.    During the foregoing telephone conference, Theatrical Arts' counsel advised the AAA Case Manager that Theatrical Arts denied that it was obligated to arbitrate Mamma Mia!'s claim and advised that Theatrical Arts had commenced a civil action in state court in California seeking to enjoin Mamma Mia! from proceeding with its arbitration claim.

### Theatrical Arts' Previously Undisclosed and Unserved California Complaint

27.    Research by Mamma Mia!'s undersigned counsel revealed that Theatrical Arts filed a civil action captioned <u>Theatrical Arts International, Inc. v. The Mamma Mia! USA Tour 2 Limited Partnership and DOES 1 through 50</u> in the Superior Court of the State of California for the County of San Bernardino on May 31, 2006, which was assigned Case No. SCVSS 138221 ("Theatrical Arts' Suit"). A true and correct copy of the Summons and Complaint in Theatrical Art's Suit is attached as Exhibit 7, including the Order Confirmation and related documents from One Legal, Inc., the attorney service company which sent Mamma Mia!'s counsel a copy of the Summons and Complaint it obtained from the California court.

28.    Theatrical Arts' Suit admits that Mamma Mia! presented the Show at the Theatre in February 2006, but claims that it does not owe any additional sums and asserts that it has no obligation to arbitrate Mamma Mia!'s claims, despite the fact that the parties signed the Booking Agreement without making any changes to ¶ 17 which provides for arbitration of any disputes, regardless of whether the parties may have disputes as to other terms of their agreement, which present issues for determination by the arbitrator alone.

29.    Theatrical Arts' Suit seeks a declaratory judgment "as to the terms of the parties' relationship" and to the effect that Theatrical Arts does not owe Mamma Mia! any additional compensation for the presentation of the Show at the Theatre in February 2006. Exhibit 7, p. 4.

30.    Theatrical Arts' Suit also seeks a temporary restraining order and a preliminary and permanent injunction "enjoining [Mamma Mia! and DOES] from initiation [sic], prosecuting, pursuing or continuing any arbitration pursuant to the purported written contract ...." Exhibit 7, p. 4.

31.    Theatrical Arts filed its suit against Mamma Mia! on May 31, 2006, the day after its attorney had written to Mamma Mia!'s counsel Andrew Farber, Esq. regarding the parties' dispute and suggesting mediation as a means of resolving it.

32.    On August 2, 2006, Theatrical Arts purportedly served the Summons and Complaint in Theatrical Art's Suit upon Mamma Mia!'s General Manager, despite the fact that it was filed on May 31, 2006.

33.    Neither Mamma Mia! nor its counsel had been informed that Theatrical Arts had filed its action in the Superior Court of California prior to the telephone conference with the AAA Case Manager on July 21, 2006.

### Theatrical Arts Should Be Ordered to Arbitration

34.    Theatrical Arts agreed in writing in ¶ 17 of the Booking Agreement to arbitrate disputes that might arise from Mamma Mia! performances of the Show at the Theatre in February 2006, but has asserted that it is not obligated to arbitrate Mamma Mia!'s dispute and filed its suit in California to prevent arbitration.

35.    Pursuant to CPLR § 7503(a) (see Section 4 of the United States Arbitration Act, 9 U.S.C. § 4), the Court should order Theatrical Arts to proceed with the arbitration commenced by Mamma Mia! before the AAA, as provided in ¶17 of the Booking Agreement.

- 8 -

## Theatrical Arts Should Be Enjoined From Pursuing Its California Suit

36.    Theatrical Arts has ignored its agreement to arbitration as the sole remedy for disputes between the parties and has improperly commenced its California suit in an attempt to interfere with and delay the arbitration and improperly adjudicate the merits of the dispute between the parties.

37.    Pursuant to CPLR § 7502(c) (see Section 4 of United States Arbitration Act) and other applicable law, the Court should enjoin Theatrical Arts from proceeding with its California suit or commencing any other action against Mamma Mia! concerning the Booking Agreement in any respect.

38.    An injunction under CPLR §7502(c) is necessary because Petitioner's right to arbitrate the parties' dispute may otherwise be rendered ineffectual if Theatrical Arts proceeds with its civil action in California state court, where it asserts that it has no obligation to arbitrate and asks the court to determine the parties' dispute on the merits, contrary to Petitioner's right to arbitrate its claims, as provided in ¶ 17 of the Booking Agreement.

**WHEREFORE,** petitioner Mamma Mia! respectfully requests that the Court issue an order as follows:  (1) directing Theatrical Arts to proceed to arbitration forthwith; (2) enjoining Theatrical Arts from proceeding with its California suit against Mamma Mia! or commencing any other action concerning the disputes covered by the parties' arbitration agreement; (3) awarding Petitioner its costs, including reasonable attorney's fees as allowed by contract or law; and (4) granting such other or further relief as the Court deems necessary and appropriate under the circumstances.

Dated:      August 2, 2006
             New York, New York

                                COWAN, DeBAETS, ABRAHAMS
                                & SHEPPARD LLP

By_____
                        Al J. Daniel, Jr.
                    41 Madison Avenue, 34th Floor
                    New York, New York 10010
                    (212) 974-7474
                    Attorneys for Petitioner
                    Mamma Mia! USA Tour 2 Limited Partnership

## VERIFICATION

STATE OF NEW YORK          )
                          )      ss.:
COUNTY OF NEW YORK         )

**DEVIN KEUDELL**, being duly sworn, states:

I am the General Manager of the Petitioner Mamma Mia! USA Tour 2 Limited

Partnership ("Mamma Mia!"), a New York limited partnership.  I have read the foregoing

Verified Petition.  The allegations therein are true based upon my personal knowledge, except as

to allegations made upon information and belief, and as to those allegations, I believe them to be

true based upon information in our files and those of The Booking Group, Inc., the booking

agent for Mamma Mia! in connection with the issues in this case, my experience in the theatrical

industry, and information provided by Mamma Mia!'s counsel.

Dated:          August 2, 2006
                New York, New York

                                                Devin Keudell

Sworn to before me
this 2 th day of August, 2006.

Notary Public

        AMY BETH JACOBS
    Notary Public, State of New York
        No. 01JA6085729
        Qualified in Kings County
Commission Expires December 30, 2006

## LIST OF EXHIBITS
## TO PETITION TO COMPEL ARBITRATION

1.  Booking Agreement and document transfer sheet from Booking Group, Inc. to Harmony Artists, Inc.

2.  Booking Agreement signed by Joseph Henson for Theatrical Arts Int'l

3.  Email from Booking Group, Inc. to Harmony Artists, Inc. re unauthorized changes to Booking Agreement

4.  Booking Agreement signed by Devin Keudell on behalf of Mamma Mia!

5.  Program for presentation of "Mamma Mia!" musical at California Theatre, San Bernardino, California, February 21-26, 2006

6.  Mamma Mia!'s Demand for Arbitration served upon Theatrical Arts and filed with American Arbitration Association, with cover letter, dated June 27, 2006

7.  Summons and Complaint in Theatrical Arts International, Inc. v. Mamma Mia! USA Tour 2 Limited Partnership, Civil Action No. SCVSS 138221, Superior Court of the State of California, County of San Bernardino, filed May 31, 2006, with One Legal, Inc. order documents

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

Application of                                    :

THE MAMMA MIA! USA TOUR 2                          :
LIMITED PARTNERSHIP, a New York                    :
Limited Partnership,                               :
                                                   :
                          Petitioner,              :          Index No. _602724/06_
                                                   :
Pursuant to NY CPLR § 7503 and                     :
The United States Arbitration Act, 9 U.S.C. § 1 et seq. :
For An Order and Judgment Compelling Respondents   :
To Arbitrate and Enjoining Respondents From        :
Pursuing A Civil Action,                           :
                                                   :
      -against-                                    :
                                                   :
THEATRICAL ARTS INTERNATIONAL, INC. and            :
THEATRICAL ARTS INTERNATIONAL                      :
FOUNDATION, California corporations,               :
                                                   :
                          Respondents.             :

------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT
## OF PETITION TO COMPEL ARBITRATION
### AND ENJOIN RESPONDENTS FROM LITIGATION

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT ................................................................................................... 2

ARGUMENT ..................................................................................................... 5

I.    THE PARTIES AGREED TO ARBITRATE IN
      MANHATTAN AND THIS IS THE PROPER
      FORUM TO COMPEL RESPONDENTS TO DO SO ............................... 5

II.   THIS COURT SHOULD ORDER RESPONDENTS TO ARBITRATE
      PETITIONER'S CLAIMS PENDING BEFORE THE AAA ..................... 7

III.  THE COURT SHOULD ENJOIN THEATRICAL ARTS
      FROM PURSUING ITS CALIFORNIA LAWSUIT BECAUSE
      IT IS OBLIGATED TO ARBITRATE PETITIONER'S CLAIMS ............ 10

CONCLUSION ................................................................................................ 11

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the petition of Mamma Mia! USA Tour 2 Limited Partnership ("Mamma Mia!"), pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 401 et seq. and 7501 et seq., and the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., to compel respondents Theatrical Arts International, Inc. and/or Theatrical Arts International Foundation (collectively "Theatrical Arts") to arbitrate petitioner's claim for lost ticket revenues of approximately $103,719.05 resulting from Petitioner's road show production of the popular musical "Mamma Mia!" (the "Show") presented by Respondents during February 21-26, 2006 at the California Theatre in San Bernardino, California, as agreed in ¶ 17 of the parties' Booking Agreement. See accompanying Verified Petition to Compel Arbitration & Enjoin Respondents from Litigation ("Pet.").

In pertinent part, the parties' Booking Agreement, ¶ 17, provides that "[a]ny claims, dispute, or controversy arising out of or relating to this [booking] agreement shall be submitted to arbitration in Manhattan, New York before one arbitrator pursuant to the rules then applicable of the American Arbitration Association ..." and that "the prevailing party in the arbitration being entitled to all costs including reasonable attorney's fees." Pet. Exs. 1-3.

On June 27, 2006, Mamma Mia! served upon Respondents and filed with the American Arbitration Association ("AAA") a Demand for Arbitration pursuant to the foregoing ¶ 17 of the Booking Agreement. Pet. Ex. 6.

However, during a case conference with the AAA Case Manager on July 21, 2006, counsel for Respondents asserted that they were not obligated to arbitrate the dispute and revealed that Theatrical Arts had, on May 31, 2006, file an action in a California state court for a determination and injunctive relief to the effect that it was not obligated to arbitrate and that it did not owe Mamma Mia! any additional compensation for the Show. Mamma Mia! and its

counsel were unaware of this action and Mamma Mia! has never been served with the summons and complaint in that action.

Mamma Mia! commenced this proceeding pursuant to the United States Arbitration Act to compel Theatrical Arts to arbitrate the dispute in accordance with the arbitration provision in ¶ 17 of the Booking Agreement of the parties and to enjoin Theatrical Arts from proceeding with its California suit.

**STATEMENT**

The pertinent facts are set forth in detail in the accompanying Verified Petition. Briefly, Petitioner Mamma Mia! is the road show production of the popular musical "Mamma Mia!" which began in London, England, has had and continues a long run on Broadway in New York City, and has been presented in approximately seventy-five (75) cities in the United States in numerous different states.

The dispute in this case arises from Respondents' presentation of the Show at the California Theatre in San Bernardino, California during February 21-26, 2006. Mamma Mia! claims that Respondents sold certain tickets for the show at discounted prices below those required by Mamma Mia! and agreed to by Respondents, resulting in a loss of revenue to Mamma Mia! of approximately $103,719.05.

Beginning in 2003, Respondents theatrical presenters began negotiations with Petitioner for presentation of the Show at the California Theatre in San Bernardino, California. From the outset, Mamma Mia! made it clear that its ticket prices for the Show were non-negotiable and that it would seek another presenter in that area if Respondents did not agree to Mamma Mia!'s ticket prices.

After negotiations on various issues, the parties reach agreement on terms for the Show in 2005. On December 23, 2005, Mamma Mia! discovered that Theatrical Arts had been offering

tickets for sale for the Show at discounted prices below those agreed upon by the parties. However, since they had already been offered for sale at those prices, Mamma Mia! reluctantly agreed on these lower prices.

On January 11, 2006, Mamma Mia! sent Theatrical Arts execution copies of the Booking Agreement for signature by Theatrical Arts. On February 7, 2006, Theatrical Arts faxed the Booking Agreement signed by its president, who had made unauthorized changes to various terms, including a schedule of further discounts for tickets below those agreed upon by Mamma Mia! On February 8, 2006, Mamma Mia! sent an email to Theatrical Arts advising that it had not agreed to further ticket discounts and other changes made by Theatrical Arts.

Mamma Mia! signed the Booking Agreement on or about February 16, 2006, with changes made to conform to the parties' prior agreement. It was discussed with Theatrical Arts by Mamma Mia!'s Company Manager on or about February 21, 2006.

Neither Mamma Mia! nor Theatrical Arts made any changes to ¶ 17 of the Booking Agreement, which provides for resolution of any disputes by arbitration in Manhattan, New York under the auspices of the AAA. Pet. Exs. 1-3.

Mamma Mia! presented the Show at the Theatre pursuant to the Booking Agreement from February 21-26, 2006. Theatrical Arts paid Mamma Mia! the minimum guaranteed fee of $375,000 (less tax withholdings).

Mamma Mia! demanded that Theatrical Arts pay the additional sum of $103,719.05, the ticket revenue lost as a result of Theatrical Arts selling tickets to the Show at discounts which had not been agreed to by Mamma Mia! The parties' counsel were unable to negotiate a resolution of the dispute.

On June 27, 2006, Mamma Mia! served a Demand for Arbitration upon Theatrical Arts and filed it with the AAA, pursuant to ¶ 17 of the Booking Agreement. During the first

- 3 -

telephone conference with the AAA's Case Manager, counsel for Theatrical Arts advised that it disputed that it was obligated to arbitrate and, for the first time, advised that Theatrical Arts had filed a civil action in a California state court seeking to enjoin Mamma Mia! from proceeding with arbitration and to determine that Theatrical Arts owed no additional payments to Mamma Mia! Pet. Ex. 7.

An investigation disclosed that Theatrical Arts' attorney filed an action captioned Theatrical Arts International, Inc. v. The Mamma Mia! USA Tour 2 Limited Partnership and DOES 1 through 50, Case No. SCVSS 138221, in the Superior Court of the State of California for the County of San Bernardino on May 31, 2006 ("Theatrical Arts' Suit"). Pet. Ex. 7. Theatrical Arts did not purportedly serve Mamma Mia! with the summons and complaint in its suit until August 2, 2006, more than two months after it was filed and more than a month after Mamma Mia! commenced its arbitration. Theatrical Arts' attorney drafted the complaint in that action while negotiating with Mamma Mia's counsel. Pet ¶ 21 and Ex. 7.

The parties' Booking Agreement, ¶17, Pet. Exs. 1-3, provides for resolution of disputes by arbitration in Manhattan, New York and Mamma Mia! has commenced an arbitration proceeding in accordance with that provision.

## ARGUMENT

I.  **THE PARTIES AGREED TO ARBITRATE IN MANHATTAN AND THIS IS THE PROPER FORUM TO COMPEL RESPONDENTS TO DO SO.**

Both New York and United States law strongly favor arbitration of disputes as agreed by the parties. CPLR § 7501 et seq.; United States Arbitration Act, 9 U.S.C. §§ 1 et seq. ("the Arbitration Act"); State of New York v. Philip Morris Incorporated, 813 N.y.S.2d 71, 75 (1st Dep't 2006). This Court should compel Theatrical Arts to fully participate in the arbitration proceeding commenced by Mamma Mia! in accordance with ¶ 17 of the parties' Booking Agreement, Pet. Exs. 1-3, and enjoin Theatrical Arts from maintaining or continuing any civil action against Mamma Mia! with the scope of their arbitration agreement, particularly the California state action commenced by Theatrical Arts. CPLR § 7503; see Section 4 of the Arbitration Act, 9 U.S.C. § 4.

CPLR § 7503 and the Arbitration Act authorize this Court to compel Theatrical Arts to arbitrate Mamma Mia!'s claims before the AAA in Manhattan as provided in ¶ 17 of the Booking Agreement. The agreement for arbitration was signed by both parties and ¶ 17 was unchanged by the parties, regardless of any dispute between them as to the applicable terms concerning ticket prices, or any contention by Theatrical Arts that the parties' entire agreement was induced by fraud, which present arbitrable issues for the arbitrator. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983); State of New York v. Philip Morris, supra.

The parties' agreement clearly had an effect on interstate commerce, making the federal Arbitration Act applicable here. Matter of Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 250, 793 N.Y.S.2d 831, 832 (2005); Hirschfeld Productions, Inc. v. Mirvish, 88 N.Y.2d 1054, 1055, 651 N.Y.S.2d 5, 6 (1996). Petitioner Mamma Mia! is a

- 5 -

limited partnership organized under the laws of the State of New York with its principal office in Manhattan, New York City, whose partners, general and limited, are citizens of the States of New York and Delaware and are subjects of the foreign states of Sweden, the United Kingdom, Panama, and Canada. Respondents Theatrical Arts are corporations organized under the laws of the State of California, whose principal offices are located in California. Pet. ¶¶ 2-3. Petitioner Mamma Mia! has presented the Show in approximately seventy-five (75) cities in various states throughout the United States, including at Respondents' Theatre in San Bernardino, California. Pet. Compel ¶ 2. The parties' agreement clearly affected commerce within the meaning of the Arbitration Act. 9 U.S.C. §§ 1 and 2. Matter of Diamond Waterproofing, supra.

Theatrical Arts negotiated for presentation of the Show with Petitioner, a New York limited partnership based in Manhattan over a period of three years by telephone, email and otherwise. Theatrical Arts agreed in writing to resolve disputes with Mamma Mia! in Manhattan by arbitration. It thus consented to personal jurisdiction in this Court to the extent necessary to enforce the parties' arbitration agreement. CPLR §§ 7501 and 7502(a)(i). "By agreeing to arbitrate in New York, where the United States Arbitration Act makes such agreements specifically enforceable, the defendant must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos, 553 F.2d 842, 845 (2d Cir. 1977); accord, American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 352 (2d Cir. 1999). Thus, this Court has jurisdiction, this is the proper venue, and Theatrical Arts is properly before the Court.

## II.   THIS COURT SHOULD ORDER RESPONDENTS TO ARBITRATE PETITIONER'S CLAIMS PENDING BEFORE THE AAA.

This Court should order Theatrical Arts to arbitrate Mamma Mia!'s claims, now pending

before the AAA, because Theatrical Arts agreed to do so in ¶ 17 of the parties' Booking

Agreement. Pet. Exs. 1-3. New York and federal courts liberally enforce such agreements under

the strong policies of this State and the United States favoring arbitration. CPLR §§ 7501 and

7503; Arbitration Act, 9 U.S.C. § 4.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine

whether the parties agreed to arbitrate that dispute ..., applying the 'federal substantive law of

arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" Mitsubishi

Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), quoting Moses H.

Cone Memorial Hospital, 460 U.S. at 24. Under federal substantive law,

> questions of arbitrability must be addressed with a healthy regard for the federal
> policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of
> federal law, any doubts concerning the scope of arbitrable issues should be
> resolved in favor of arbitration, whether the problem at hand is the construction of
> the contract language itself or an allegation of waiver, delay, or a like defense to
> arbitrability.

Moses H. Cone Memorial Hospital, 460 U.S. at 24-25; accord, Chelsea Square Textiles, Inc. v.

Lazar, 189 F.2d 289, 294 (2d Cir. 1999) (acknowledging "bias in favor of arbitration"). This

Court applies the Arbitration Act this agreement at issue involves and affects commerce among

the states. Matter of Diamond Waterproofing, supra.

Mamma Mia!'s arbitration agreement with Theatrical Arts is clearly subject to the United

States Arbitration Act because it concerns "a transaction involving commerce ...," defined in the

Act as concerning "commerce among the several States or with foreign nations ...." 9 U.S.C. §§

1 and 2. The phrase "involving commerce" in Section 1 of the Act is "the functional equivalent

of the more familiar term 'affecting commerce'--words of art that ordinarily signal the broadest

permissible exercise of Congress' Commerce Clause power." The Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967); accord, Matter of Diamond Waterproofing Systems, supra, 4 N.Y.3d at 250, 793 N.Y.S.2d at 832.

Indeed, where there is an arbitration agreement covered by the Arbitration Act, the Act preempts any contrary state law that would otherwise provide a judicial remedy for the dispute involved. Perry v. Thomas, 482 U.S. 483, 489-491 (1987) (preempting California statute providing judicial remedy for wage dispute, despite arbitration agreement).

Petitioner Mamma Mia! - a New York limited partnership - is the producer of a road show of the popular musical "Mamma Mia!" which began on the London stage, is still running on Broadway, and has been presented in some seventy-five cities in numerous state across the United States. Petitioner's agreement with Theatrical Arts to present the show in the California Theatre in San Bernardino, California, clearly involves "commerce among the several states" and is subject to the liberal policy in favor of arbitration articulated by Congress in the United States Arbitration Act. 9 U.S.C. §§ 1 and 2.

Here, it is indisputable that Theatrical Arts and Mamma Mia! signed separate copies of the Booking Agreement which contained identical and unchanged arbitration provisions in ¶ 17. Pet. Exs. 2 and 4. Thus, Theatrical Arts should be compelled to arbitrate Mamma Mia!'s claim that it is owed additional compensation because Theatrical Arts sold discounted tickets contrary to the parties' agreement. The dispute between the parties as to the agreed terms for ticket prices is an arbitrable issue which must be resolved by the arbitrator in light of the undisputed agreement to arbitrate such disputes. Robert Lawrence Company, Inc. v. Devonshire Fabrics, Inc., 271 F.2d 402, 411 (2d Cir. 1959) (where both parties signed separate documents with identical arbitration provision, their dispute as to differences in contractual documents is for

- 8 -

arbitrator); accord, Denny v. BDO Seidman, L.L.P., 412 F.3d 58, 66-69 (2d Cir. 2005) (rejecting district court's refusal to compel arbitration based on lower court's conclusion that agreement was product of mutual fraud). Accord, State of New York v. Philip Morris, supra.

Moreover, Theatrical Arts should be estopped from challenging the arbitration provision in the Booking Agreement which it exploited to its benefit. Mag Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001); accord, Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp.2d 182, 187 (S.D.N.Y. 2006).

Where there is an agreement to arbitrate, as here, all remaining issues between the parties, including a claim that the contract was induced by fraud, are arbitrable and to be determined by the arbitrator. Moses H. Cone Memorial Hospital, 460 U.S. at 24-25. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. Accord, State of New York v. Philip Morris, supra.

It is clear that there was an agreement between the parties for Petitioner to present the "Mamma Mia!" show at Respondents' California Theatre in San Bernardino, California, from February 21, 2006. Petitioner presented the Show during that time, as shown by the program for the Show and Respondents paid Petitioner the guaranteed minimum fee of $375,000 (less withheld taxes), as provided in ¶ 4(A)(1) of the Booking Agreement. Pet. ¶¶ 14-15 and Exs. 2 and 5. Any dispute between the parties as to whether additional compensation is due to Petitioner, as it claims, is grist for the mill of arbitration.

**III.    THE COURT SHOULD ENJOIN THEATRICAL ARTS
FROM PURSUING ITS CALIFORNIA LAWSUIT BECAUSE
IT IS OBLIGATED TO ARBITRATE PETITIONER'S CLAIMS.**

Arbitration agreements covered by the United States Arbitration Act "must be 'rigorously

enforce[d].'" Perry v. Thomas, 482 U.S. at 490 (citation omitted).

In order to fully protect Mamma Mia!'s contractual right to resolve its disputes with

Theatrical Arts by arbitration, which could be rendered ineffectual by Theatrical Arts' California

lawsuit, the Court should enjoin Theatrical Arts from maintaining or further pursuing its

California state court action, or any other within the scope of the parties arbitration agreement.

Pet. ¶ 38.  CPLR § 7502(c); see Section 4, Arbitration Act, 9 U.S.C. § 4.  Theatrical Arts quietly

filed its California action on May 31, 2006, but not even disclose that fact until after Mamma

Mia! had commenced arbitration proceedings before the AAA, pursuant to ¶17 of the parties'

Booking Agreement.  The action was just purportedly served on Petitioner on August 2, 2006 in

the midst of the AAA arbitration.

Courts regularly enjoin such lawsuits commenced in violation of an arbitration agreement

covered by the Arbitration Act and CPLR § 7502(c), as this Court should do.  Prima Paint Corp.,

388 U.S. at 399 (Supreme Court and Second Circuit affirmed district court's stay of court action

pending arbitration); SG Avipro Finance Ltd. v. Cameroon Airlines, 2005 U.S. Dist LEXIS

11117 (S.D.N.Y., 05 Civ. 755, June 8, 2005) (arbitration compelled; foreign suit enjoined); see

Moses H. Cone Memorial Hospital, 460 U.S. at 22-25 (district court erred by failing to compel

arbitration under Arbitration Act and enjoin state court action on same dispute).  Accord,

Congregation Darech Amuno v. Blasof, 226 A.D.2d 236, 640 N.Y.S.2d 564 (1st Dep't 1996);

National Telecommunications Ass'n, Ltd. V. National Communications Ass'n, Inc., 189 A.D.2d

573, 592 N.Y.S.2d 591 (1st Dep't 1993); see Drexel Burnham Lambert Incorporated v.

Ruebsamen, 139 A.D.2d 323, 531 N.Y.S.2d 547 (1st Dep't 1988).

- 10 -

Theatrical Arts agreed to arbitrate disputes with Mamma Mia! arising from the Booking Agreement and production of the Show by arbitration before the AAA in Manhattan. It should be compelled to do so and it should be further enjoined from maintaining or pursuing its civil action against Mamma Mia! in California state court, consistent with the arbitration agreement which Theatrical Arts signed.

### CONCLUSION

For the foregoing reasons, the Court should enter an order as follows:  (1) directing Theatrical Arts to proceed to arbitration forthwith; (2) enjoining Theatrical Arts from proceeding with its California suit against Mamma Mia! or commencing any other action concerning the disputes covered by the parties' arbitration agreement; (3) awarding Petitioner its costs, including reasonable attorney's fees as allowed by contract or law; and (4) granting such other or further relief as the Court deems necessary and appropriate under the circumstances.

Dated:          August 3, 2006
                New York, New York

                              COWAN, DeBAETS, ABRAHAMS
                                & SHEPPARD LLP

                              By _____
                                   Al J. Daniel, Jr.
                              41 Madison Avenue, 34th Floor
                              New York, New York 10010
                              (212) 974-7474
                              Attorneys for Petitioner
                              Mamma Mia! USA Tour 2 Limited Partnership

and (4) granting such other or further relief as the Court deems necessary and appropriate under

the circumstances.

Dated:         August 2, 2006
               New York, New York

                              COWAN, DeBAETS, ABRAHAMS
                                    & SHEPPARD LLP

                              By _____
                                    Al J. Daniel, Jr.
                              41 Madison Avenue, 34th Floor
                              New York, New York 10010
                              (212) 974-7474
                              Attorneys for Petitioner
                              Mamma Mia! USA Tour 2 Limited Partnership

## COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

### ATTORNEYS AT LAW

FREDERICK P. BIMBLER
TOBY M. J. BUTTERFIELD
AL J. DANIEL, JR.
TIMOTHY J. DeBAETS
ROBERT I. FREEDMAN
MITCHELL E. RADIN
ROBERT L. SEIGEL
J. STEPHEN SHEPPARD
RALPH J. SUTTON*
KENNETH N. SWEZEY
DAVID B. WOLF
NANCY E. WOLFF

LISA K. DIGERNES
MATTHEW A. KAPLAN°

PHILIP M. COWAN (1943-2001)
HOWARD ABRAHAMS (1945-1996)

August 7, 2006

adaniel@cdas.com

OF COUNSEL:
ANNE C. BAKER
JUDITH A. BRESLER
JERROLD B. GOLD
ALBERT GOTTESMAN
ROGER E. KASS
ELLIS B. LEVINE
MICHAEL D. REMER
ROBERT F. VAN LIEROP

CORRESPONDENT FIRM:
DONALDSON & HART
9220 SUNSET BLVD. STE. 224
LOS ANGELES, CA 90069
(310) 273-8394

*ALSO ADMITTED IN CA & DC
°ALSO ADMITTED IN NJ

Ms. Lisa M. Bellegarde
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

**By Email to BellegardeL@adr.org,
with Attachments**

Re:    The Mamma Mia! USA Tour 2 Limited Partnership v.
        Theatrical Arts International Inc. et al., AAA #13 459 01 484 06

Dear Ms. Bellegarde:

We represent The Mamma Mia! USA Tour 2 Limited Partnership ("Mamma Mia!") which served and filed the Demand for Arbitration in this case on June 27, 2006.

As requested in your letter of August 1, 2006, this responds to the letter to me dated August 1, 2006 from respondents' attorney John G. Burgee, Esq., a copy of which he sent to you. Mr. Burgee's letter enclosed copies of his letter to Andrew Farber, Esq. dated May 30, 2006, and of Theatrical Art's summons and complaint against Mamma Mia! filed in the Superior Court of California on May 31, 2006, which I requested in our July 21 telephone conference with you.

As explained below, Mamma Mia! has filed a Petition to Compel Arbitration & Enjoin Litigation against Theatrical Arts in the Supreme Court of New York for New York County, in Manhattan, the venue for the arbitration. A hearing on the petition is scheduled for August 10, 2006. This court should promptly resolve the question whether Theatrical Arts is obligated to arbitrate Mamma Mia!'s claim pursuant to ¶ 17 of the Booking Agreement which Theatrical Arts signed. In the meantime, the AAA should continue to administer Mamma Mia!'s claim in accordance with its rules and procedures.

On July 25, 2006, I obtained a copy of Theatrical Arts' California summons and complaint through an attorney service company, when I did not promptly receive a copy from Mr. Burgee. After reviewing this summons and complaint on July 25, I began drafting a petition to compel Theatrical Arts to arbitrate and to enjoin its California lawsuit. Mamma Mia!'s Petition to Compel Arbitration and Enjoin Litigation pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq., was filed in the Supreme Court of the State of New York, County of New York, on August 3, 2006.

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

Ms. Lisa M. Bellegarde, Case Manager
American Arbitration Association
August 7, 2006
Page 2

The New York judge in Mamma Mia!'s case issued an Order to Show Cause dated August 3, 2006 which requires Theatrical Arts to show cause why it should not be compelled to arbitrate Mamma Mia!'s claims and why Theatrical Arts should not be enjoined from pursing litigation. The Order to Show Cause, served upon Mr. Burgee on August 4, requires Theatrical Arts to respond by August 9 and scheduled oral argument on Mamma Mia!'s petition for Thursday, August 10, 2006 at 9:30 a.m.

I am sending this letter to you by email and attaching PDF files of the following documents from Mamma Mia!'s New York case: the Order to Show Cause; the Petition to Compel Arbitration & Enjoin Litigation, with exhibits; the Memorandum of Points and Authorities in Support of the Petition; and my Emergency Affirmation.

The New York court, in the venue where the contract provides for arbitration, is the appropriate forum to address Theatrical Arts' contention that it is not obligated to do so. See 9 U.S.C. § 4; NY CPLR § 7502(a)(i). The only issue properly before the court is whether the parties agreed to arbitrate their disputes. Here, we believe they clearly did. Both parties signed the Booking Agreement, ¶ 17 of which contains an arbitration agreement unchanged by either party.

In Mamma Mia!'s view, Theatrical Arts has followed a carefully calculated course designed to delay resolution of the merits of Mamma Mia!'s claims by arbitration, as the parties agreed, and to make the process as expensive for Mamma Mia! as possible.

Mr. Burgee's letter to Mr. Farber on May 30, 2006 was the last in a series of correspondence initiated by Mamma Mia!'s counsel aimed at resolving the dispute by negotiation. The next-to-last paragraph of Mr. Burgee's letter of May 30 to Mr. Farber disingenuously recommended mediation in light of the cost of litigation. In fact, Mr. Burgee had just the day before signed Theatrical Arts' California court complaint, which he filed on May 31, 2006, the day after his letter to Mr. Farber.

Theatrical Arts -- apparently deliberately -- did not promptly serve its California summons and complaint upon Mamma Mia! Instead, it waited until August 2, 2006 to do so, more than two months after it was filed in court and more than five weeks after Mamma Mia! served and filed its Demand for Arbitration with the AAA.

Mr. Burgee's assertion that Mamma Mia!'s arbitration demand "is based upon a fraudulent document" is false. Both Theatrical Arts' and Mamma Mia! signed the Booking Agreement without either making any changes at all to ¶ 17 of the agreement, which provides for arbitration of disputes. Having agreed to arbitrate, whatever contentions Theatrical Arts may have regarding whether it breached the agreement by selling tickets below the agreed prices is for the arbitrator, not a court.

As explained in detail in the Mamma Mia!'s Demand for Arbitration and Petition to Compel, the parties negotiated over a period of three years about presentation of the show, during which Mamma Mia! repeatedly told Theatrical Arts that ticket prices were not negotiable and that it would seek another presenter if Theatrical Arts did not agree to Mamma Mia!'s ticket prices. After

COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

Ms. Lisa M. Bellegarde, Case Manager
American Arbitration Association
August 7, 2006
Page 3

promising to abide by Mamma Mia!'s ticket price schedule, Theatrical Arts started selling tickets
below those prices in the Fall of 2005, which Mamma Mia! did not learn until December 2005, at
which point Mamma Mia! thought it was too late to change them, even though Theatrical Arts was
selling tickets below the agreed prices.

In mid-January 2006, Mamma Mia! sent Theatrical Arts execution copies of the Booking
Agreement, which included the ticket prices at which Theatrical Arts had been selling on
Ticketmaster, even though those prices were below those previously required by Mamma Mia!  Yet
Theatrical Arts tried to insert even lower prices in the written agreement, contrary to the parties'
deal.  After receiving Theatrical Arts' signed Booking Agreement on February 7, with its second
unauthorized changes in ticket prices, Mamma Mia! sent an email on February 8 which pointed out
the error in ticket prices, among other things.

Theatrical Arts was thus on notice as of February 8, 2006, that Mamma Mia! did not agree
to Theatrical Arts' unauthorized reduction in ticket prices.  Mamma Mia!'s General Manager signed
the Booking Agreement on February 16, 2006, after modifying it to reflect the parties' prior
agreement, including omitting the provision for further discounting of tickets.  This Agreement was
discussed with Theatrical Arts on or after February 21, 2006 by Mamma Mia!'s Company Manager
Bob Tevyaw.  In any event, Theatrical Arts paid Mamma Mia! the guaranteed minimum fee of
$375,000 (less withheld taxes) and Mamma Mia! performed this large and expensive musical at
Theatrical Arts' theatre from February 21-26, 2006.  Mamma Mia!'s claim for additional payment
based upon the ticket prices agreed upon by the parties should be resolved under the arbitration
provision, ¶ 17 of the Booking Agreement, to which Theatrical Arts agreed.

We will submit our proposed list of arbitrators by August 16, 2006, as instructed in your
letter of August 1, 2006.  Please contact me if you have any questions or need additional
information.

Sincerely yours,

Al J. Daniel, Jr.

cc:    John G. Burgee, Esq. (by email to jburgee@calcorps.com)
       Attorney for Respondents

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

Application of

THE MAMMA MIA! USA TOUR 2
LIMITED PARTNERSHIP, a New York
Limited Partnership,

                            Petitioner,

Pursuant to NY CPLR § 7503 and
The United States Arbitration Act, 9 U.S.C. § 1 et seq.
For An Order and Judgment Compelling Respondents
To Arbitrate and Enjoining Respondents From
Pursuing A Civil Action,

        -against-

THEATRICAL ARTS INTERNATIONAL, INC. and
THEATRICAL ARTS INTERNATIONAL
FOUNDATION, California corporations,

                        Respondents.

-----------------------------------------------------------------x

Index No. _602724/06_

**EMERGENCY AFFIRMATION
OF AL J. DANIEL, JR., ESQ.**

AL J. DANIEL, JR., affirms and says:

1.    I am an attorney admitted to practice in the Courts of the State of New York and am a partner in the firm of Cowan, DeBaets, Abrahams & Sheppard LLP, attorneys for Petitioner Mamma Mia! USA Tour 2 Limited Partnership ("Mamma Mia!"). I affirm under penalty of perjury that the statements herein are true to the best of my knowledge, information and belief.

2.    I submit this emergency affirmation in support of Mamma Mia!'s accompanying Verified Petition to Compel Arbitration and Enjoin Litigation and its request for preliminary relief requiring Respondents to continue to participate in the arbitration commenced by Petitioner on June 26, 2006 before the American Arbitration Association ("AAA"), subject to its objection that it is not obligated to do so, and to preliminarily enjoin Respondents from proceeding with a

civil action commenced in a California state court, but which was not purportedly served upon Petitioner until August 2, 2006.

3.    Petitioner contends that Respondents are obligated to arbitrate their pending dispute before the AAA pursuant to ¶ 17 of the parties' Booking Agreement. Petition Exhibits 1-3. It is for this Court to determine whether that provision obligates Respondents to arbitrate Petitioner's claims. CPLR § 7501 et seq. and United States Arbitration Act, 9 U.S.C. § 1 et seq. The parties' agreement affects interstate commerce and is thus subject to the federal Arbitration Act. Id.

4.    The preliminary relief sought by Petitioner under CPLR § 7503(c) is necessary to protect Mamma Mia!'s claimed contractual right to arbitrate its dispute with Respondents for approximately $103,719.05 in connection with Petitioner's road show production of the musical "Mamma Mia!" presented at Respondents' theatre in San Bernardino, California during February 21-26, 2006. If Respondents are not compelled to continue participation in the AAA arbitration, pending this Court's determination whether it is contractually obligated to do so, and preliminarily enjoined from litigating the same issue and seeking a determination on the merits in a California court, Petitioner's claimed right to pursue and obtain award in arbitration may be rendered ineffectual.

5.    For the foregoing reasons, and those set forth in the accompanying Verified Petition to Compel Arbitration & Enjoin Litigation, and the Memorandum of Law in Support, the Court should issue the proposed Order to Show Cause and grant the preliminary relief therein.

6.    No prior application has been made for the relief sought in the Verified Petition or in the proposed Order to Show Cause.

- 2 -

Dated: August 3, 2006
      New York, New York

                      Al J. Daniel, Jr.
                COWAN, DeBAETS, ABRAHAMS
                  & SHEPPARD LLP
                41 Madison Avenue, 34th Floor
                New York, New York 10010
                (212) 974-7474
                Fax: (212) 974-8474
                Email: adaniel@cdas.com
                Attorneys for Petitioner

# EXHIBIT 1

# document transfer

### Method of Delivery
_____ US Mail                          _____ Overnight Delivery Service
_____ Messenger / Hand Delivery        _____ Facsimile

### Delivery Information
CONTACT:        **Adrienne Crane**
COMPANY:        **Harmony Artists, Inc.**
FAX NUMBER:     **1-323-655-5154**
DATE:           **January 11, 2006**
RE:             **MAMMA MIA! – SAN BERNARDINO**
FROM:           **LAURA KOLARIK**

---

### MESSAGE:

Dear Adrienne:

Enclosed, please find three copies of the booking agreement for MAMMA MIA! in San Bernardino. Please sign and return all three copies to me as soon as possible. Once the agreements have been fully executed, I will return a copy to you for your files. If you plan to make any changes to the agreement, please call me before to discuss. The GM insists on a clean contract for signature.

Of course, if you have any questions or concerns, please call.

Sincerely,


Enclosures:      Contract – For Execution

# BOOKING AGREEMENT

145 West 45th Street
8th Floor
New York, NY
10036

212-869-9280
Fax
212-869-3028

Agreement made this 23RD day of **DECEMBER, 2005** by and between

**MAMMA MIA USA TOUR 2, LP**
(the "Producer")

and          **THEATRICAL ARTS INTERNATIONAL**
located at   **C/O HARMONY ARTISTS**
             **8455 BEVERLY BLVD., SUITE 400**
             **LOS ANGELES, CA 90048**
Contact: **Joseph Henson** Phone: (909)885-5152 Fax: 1-909-885-8672
(the "Presenter")

*NOT FOR EXECUTION INFO COPY*

It is mutually agreed by and between Producer and Presenter as follows:

1. Presenter desires to present and Producer agrees to provide a theatrical touring company of:

**MAMMA MIA!** (the "Attraction") in **SAN BERNARDINO, CA** (the "City")
for the following performances:

**FEBRUARY 21 - 26, 2006 (8 Performances)**
**TUESDAY - SATURDAY EVES @ 8:00PM**
**SATURDAY & SUNDAY MATS @ 2:00PM**
**SUNDAY EVE @ 7:00PM**
**(the "Performances")**

2. Presenter agrees to engage, and shall have the exclusive right to present, the Attraction in the City for the performances listed above, and agrees to furnish the

**CALIFORNIA THEATRE** (the "Theatre") located at:
**562 W. 4TH STREET**
**SAN BERNARDINO, CA 92402**
with a seating capacity of: **1,578.**

The seating capacity listed above includes any and all seats available for occupancy, including any corporate and/or sponsor seats and viewing rooms.

Presenter warrants that it owns or has a valid and effective lease for the Theater for the period from: 8:00 AM on **Monday, February 20, 2006** (the exact day and time of <u>a prior</u> spotting call shall be scheduled by Producer) until **Midnight on Sunday, February 26, 2006 or until the Load-out is completed, whichever is later.** (the "Term").



THE
BOOKING
GROUP

MAMMA MIA! – SAN BERNARDINO, CA

3.    Definition of Net Adjusted Gross Weekly Box Office Receipts (NAGWBOR)

Net Adjusted Gross Weekly Box Office Receipts (hereinafter "NAGWBOR") shall be defined for purposes of this Agreement as all Gross Weekly Box Office Receipts (hereinafter "GWBOR") from any source whatsoever from the sale of tickets at the ticket prices as set forth on the attached Schedule "A" (Ticket Prices and Gross Potential) to performances of the Attraction hereunder less only as follows:

a) The charges set forth below in addition to any other reasonable service or postage and handling surcharges paid by ticket purchasers over and above the ticket prices as noted below:

Restoration Charge                                                      N/A

The GWBOR will not be subject to surcharges other than those described above. All surcharges must be listed herein or must be mutually agreed to in writing by both parties in a separate addendum of this agreement; if such a surcharge is not disclosed and mutually agreed upon, it will not be allowed.

b) Any discounts as set forth on the attached Schedule "A2" (Ticket Discounts and Commissions), or otherwise agreed to in writing. Group sales discounts shall only apply to groups that attend the same performance, unless approved in writing in advance.

c) Any tax or taxes, imposed on the sale of tickets as set forth on the attached Schedule "A2", and actually collected and paid to governmental tax authorities. The tax or taxes shall be calculated on the GWBOR only after the discounts and charges set forth in sub-paragraphs 3. a) & b) above have been deducted. Presenter agrees to provide documentation and proof of payment of these taxes. Presenter warrants that the GWBOR shall not be subject to taxes other than those specifically indicated.

d) The ticketing commissions only as set forth on the attached Schedule "A2". These commissions shall be calculated on the GWBOR only after the discounts, charges and taxes set forth in sub-paragraphs 3. a), b) and c) above have been deducted. Presenter warrants that each ticket sold shall not be subject to more than one of the ticketing commissions set forth on Schedule A2 (for example, Credit Card Commissions cannot be taken on Subscription and Group ticket sales). Presenter additionally warrants that the GWBOR shall not be subject to ticketing commissions other than those specifically listed on Schedule A2. Presenter shall not be obligated to furnish substantiation or documentation for the commission rates set forth on Schedule A2, but shall provide bona fide documentation (for example, a signed group contract, etc.) calculating the amount of groups, phone sales, remote sales and subscription tickets sold and method of payment.

MAMMA MIA! – SAN BERNARDINO, CA

4.    Compensation to Producer

A.  The NAGWBOR as defined in paragraph 3. above for the performances hereunder shall be paid and distributed as follows:

1)      Presenter agrees to pay Producer a weekly Guarantee (based on an eight performance week) of: THREE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($375,000.00) PER WEEK, payable by 2PM the day of the first performance of each playing week hereunder (No deposit is required for this engagement), plus: (It is understood that Presenter shall pay any and all Local Expenses (as described herein) and that the Presenter shall not be obligated to furnish substantiation or documentation for Presenter's Local Fixed Expenses. Presenter agrees to pay Producer the Guarantee as set forth above, irrespective of the actual gross box office receipts derived from the sales of tickets to the performances hereunder, without any deduction, charge, set-off or withholding of any kind, except as specifically provided for herein).  The guarantee and fixed expenses shall be pro-rated accordingly for any week with less than eight performances.

2)      Producer shall receive overages of EIGHTY PERCENT (80%) of the weekly NAGWBOR remaining after the payments described in sub-paragraphs 2) a. and b. below payable no later than Intermission of the final performance hereunder:

a. The Guarantee set forth above, and after:

b. The Presenter's Local Expenses as follows:

1) The weekly "Local Fixed" expenses in the maximum amount(s) set forth on the attached Schedule "B", it being understood that Presenter shall not be obligated to furnish substantiation or documentation for Presenter's weekly "Local Fixed" expenses.

2) The actual weekly "Local Documented" expenses with estimates as set forth on the attached Schedule "B", it being understood that Presenter shall furnish complete, accurate and detailed substantiation and documentation of Presenter's weekly "Local Documented" expenses with documented invoices and proof of payment, subject to Producer's approval, not to be unreasonably withheld.

The Presenter's Local Expenses shall be reimbursed only as set forth on the attached Schedule "B" as Presenter's "Local Fixed" and "Local Documented" expenses (and as those expenses are further defined herein) and only for items that fall within the specific categories for which an estimated dollar value is shown.  The specific categories and amounts of Presenter's Local Expenses shall be subject to Producer's prior written approval, and once approved shall be attached and made part of this agreement.

B.  All payments due hereunder shall be made by company check or wire transfer payable to: MAMMA MIA USA TOUR 2, LP.  Any advance payments shall be sent to MAMMA MIA USA TOUR 2, LP, c/o The Booking Group, 145 West 45th Street, 8th Fl., New York, NY 10036.  For any Company bills due after the close of the engagement, please mail to:   MAMMA MIA USA TOUR 2, LP, c/o Nina Lannan Associates, 1450 Broadway, Ste. 2011, New York, NY 10018.

FEDERAL ID #: 13-4198436

5.    Production Information

Producer shall furnish the following elements of the Attraction which shall be fully rehearsed and directed and with a complete physical production as specifically set forth below:

MAMMA MIA! – SAN BERNARDINO, CA

a) All salaries, fees, and per diem expenses of Producer's employees, including all members of the cast, stage managers, traveling stagehands, traveling wardrobe personnel, traveling musicians including the musical director, traveling hairdressers, national press representative and/or traveling press agent, general manager and company manager.

b) All royalties and fees payable to the directors, designers, and Producers and the authors and owners of the performing rights of the Attraction.

c) Producer's general and administrative expenses, including but not limited to legal and accounting fees, office charges, booking fees and commissions, telephone, xerox and messenger charges, insurance premiums on Producer's policies insuring Producer's equipment and personnel.

d) All costs associated with the design, building, and rental of any and all elements of the physical production including sets, props, costumes and wigs, and all rentals on equipment furnished by the Producer.

6.      Presenter Personnel, Services & Facility Requirements

Presenter will make all necessary local arrangements with third parties and provide the local services and facilities and local personnel (including all salaries, fees, and any and all payroll taxes and fringe benefits applicable to all local personnel) as required by Producer to present a successful run of the Attraction at the Theatre in the City in accordance with theatrical industry custom and practice. It is specifically understood that the Presenter shall be solely liable for and shall pay all "Local Expenses" directly, except as otherwise agreed to herein, of every kind in connection with the presentation of the Attraction, as detailed in the attached Technical Rider and Schedule B.

a) Presenter shall furnish, and provide for the maintenance and cleaning of the theatre for the Term of this Agreement at its own expense. Presenter agrees that there shall be no discrimination practiced in the Theatre on the basis of race, color, age, creed, sex, disability or sexual orientation against any performer or patron as to admission or seating in the Theatre. Presenter shall enter into a theatre lease agreement (the "Theatre Lease") with the owner of the Theatre.

1. The Theatre Lease shall provide that the owner will furnish the Theatre at the start of the load-in clean, electrified, fully staffed, free and clear of any bandshells, motion picture screens or other impediments, properly licensed and with such heat and/or air-conditioning as is required for comfort, for the exclusive and sole use of the Producer for the Term of this Agreement.

2. The licensed premises shall include the Theatre (including but not limited to audience area and seats, stage and backstage areas, orchestra pit areas, existing permanently installed sound and lighting equipment, box booms, balcony rail hookups, house sound system, backstage paging system (if any), dressing rooms near the stage with chairs, lights, mirrors, make-up tables, hot and cold running water, hanging facilities for costumes, accessible lavatory facilities and musicians' lounge if available) in good condition and in accordance with the provisions of this Agreement, the appropriate governmental laws, licenses and regulations and in accordance with the Actors' Equity Safe and Sanitary Code. The Theatre Lease must meet all terms and conditions as specified in the attached technical rider. The Theatre Lease must also provide for the Theatre to furnish an electrical power supply separate from the Theatre's house lighting and other electrical systems adequate for the operation of Producer's sound, lighting and automation equipment as set forth in the attached Technical Rider.

3. During the Term, Producer's employees and representatives shall have full access to all areas of the Theatre as set forth above, but except as expressly provided herein, the Producer shall have no control over the actual operation of the theatre or over any operating personnel employed or utilized by Presenter. The control of all entrances and exits shall be solely exercisable by the Presenter and Presenter shall furnish adequate security for the observance of the following restrictions: No one shall enter any stage areas or

MAMMA MIA! – SAN BERNARDINO, CA

dressing rooms or audience areas except persons engaged by the Producer, the Presenter or the Theatre owner in connection with the operation of the Theatre, and, in the case of the audience areas, except members of the audience holding tickets for admission.

 4. Notwithstanding the fact that the Theatre Lease may include provisions for the facilities, services and personnel required for the presentation of the Attraction, the Presenter shall nonetheless bear primary responsibility for insuring that the provisions of this Agreement are fully complied with by the Theatre.

b) If any of the above facilities, services and personnel required for the presentation of the Attraction are not directly furnished by the Theatre in accordance with the provisions of the Theatre Lease, Presenter shall nonetheless furnish the required facilities, services and personnel and shall directly pay all local expenses and costs incurred in connection therewith including but not limited to the following:

 1. All local preliminary and weekly operating general and administrative costs of the Presenter and the Theatre for the presentation of the Attraction including all costs associated with subscription, group and single ticket advertising and ticket sales, pre-approved local press agent and Presenter staff, Theatre cleaning and customary and required maintenance and repairs, the preliminary and weekly operating costs of the box office including box office personnel, and subscription, telephone, group sales, and mail order sales clerks and staff, front of house personnel, security personnel, and all other personnel required to be engaged locally (plus applicable taxes and fringe benefits).

 2. All preliminary theatre expenses including salaries of local stagehands and/or housemen (plus applicable taxes and fringe benefits) for the spotting of lines and electrical pre-hang and preparation, clearing or "stripping" and restore of all scenery drops, drapes, lighting equipment, motion picture screens, orchestra shells and "clouds" and any extraneous equipment, materials and props from the stage floor and stage wings, lines and fly system, electrical system, orchestra pit area, auditorium and dressing rooms and in all ways technically prepared for the load-in and Technical and orchestra readings and rehearsals, all as required by Producer, and/or set forth in the attached Technical Rider, in order to properly present the show. Presenter agrees to provide for any necessary parking and/or parking permits and/or licenses (and will notify Producer or complete on the Producer's behalf any applications necessary) and to have all truck approaches to the Theatre loading dock free and clear of other vehicles or any extraneous materials so as to permit direct and unhindered approach of Producer's trucks.

 3. All costs of load-in and load-out, including salaries of local stagehands, wardrobe attendants, housemen, security personnel, stage door personnel, teamsters and loaders for the Producer's trucks (plus applicable taxes and fringe benefits), and any equipment rentals as required by Producer, the repacking of empty crates into the Producer's trucks if Theatre cannot provide adequate storage, any restoration to Theatre that may be required to Theatre and any catering required by applicable rules and regulations or in the event of a "round-the-clock" load-in.

 4. All expenses associated with providing local musicians including the local musical contractor as set forth in the attached Technical Rider, or any additional musicians or "walkers" who are required to be hired pursuant to local musicians' union rules or regulations.

 5. All local costs related to work calls and any technical rehearsal prior to the opening night of the engagement as required by the Producer and/or set forth in the attached Technical Rider (including orchestra reading and rehearsals plus orchestra sound checks, as scheduled by the Production Stage Manager or Musical Director, technical and stage, sound and lighting checks and/or rehearsals).

 6. All local costs related to performances of the Attraction to include sound and lighting checks commencing one hour before opening of the house, and all pre-sets, one hour of wardrobe pre-set, wardrobe and hair daywork (up to 64 hours per performance week), the salaries of local stagehands, wardrobe & hair attendants (including dressers), housemen, local musicians, ADA personnel (and expenses as necessary), security personnel, stage door personnel, ushers, ticket takers, house manager, technical director (if included

MAMMA MIA! – SAN BERNARDINO, CA

in yellow card), porters, cleaners, janitors, matrons, and other theatre personnel plus applicable <u>documented</u> taxes and fringe benefits.

7. All costs associated with providing all elements, materials and equipment and complying with all the terms of the attached Technical Rider necessary to accommodate the physical demands of the production.

8. Presenter agrees to adhere to and abide by the applicable rules, regulations and requirements of all unions having jurisdiction over the performances hereunder and all personnel provided by Theatre or Presenter shall be members, in good standing, of any union having jurisdiction in the state in which performances of the Attraction hereunder are to be presented, and shall be subject to Producer's supervision during the load-in, rehearsal calls, performances, and load-out of the Attraction. Producer's complaints, if any, concerning personnel furnished by Presenter shall be submitted to Presenter, and both parties shall use their best efforts to resolve any conflict.

9. Presenter shall furnish to Producer not later than Eight (8) weeks prior to the first performance hereunder, copies of all local collective bargaining agreements, union rules and regulations, salary scales and rates and union fringe benefits applicable to the required local personnel for the performances hereunder.

10. Presenter agrees that all local personnel shall be subject to Producer's supervision during load-in, rehearsals, work calls, immediately before, after and during all performances and load-out and shall comply with technical and production requirements as specified by the Producer but who shall in no event be deemed employees of Producer.

11. Presenter shall, at its own expense, provide or arrange for Theatre to provide a printed program to distribute free to each and every member of the audience for all performances hereunder. Producer shall provide the copy for the program no later than Four (4) weeks prior to the first performance hereunder. Presenter agrees to print the program in its entirety and exactly in the format provided by Producer. Presenter shall be liable for any failure to comply with this provision with the exception of any casual or inadvertent omission(s) or alteration(s), which shall promptly be remedied by Presenter.

12. Presenter agrees that if any of the requirements or conditions of this Paragraph 6 or the Technical Rider have not been duly met, fulfilled or complied with by Presenter at the times provided for, or in the event the Presenter fails to provide the personnel required by Producer, then Producer shall have the right to do what the Presenter has failed to do and Presenter agrees that the Producer's representative may, at the Presenter's sole expense, provide for such requirements or conditions and/or may engage at the Presenter's sole expense those additional personnel required at reasonable and customary rates.

13. <u>Telephone lines shall be provided by Presenter, and paid for as a Local Documented Expense.</u>

7.    Concessions and Souvenir Programs

Immediately prior to and after each performance and during intermission, Producer shall have the sole right to sell souvenir programs and show merchandise supplied by the Producer in the theater lobby, subject to the theater concessionaire's requirements, if any.   Producer shall negotiate directly with the Theater concessionaire to determine merchandising commissions.

8.    Advertising and Publicity

a) Producer agrees to furnish a complete press kit plus a reasonable quantity of heralds and window cards. Presenter agrees to follow the Producer's instructions and properly imprint, distribute and display all materials without alteration. Producer also agrees to furnish, if available, prerecorded television and radio commercials.   Presenter agrees to use only the press materials, heralds, window cards, photographs, television and radio commercials furnished by Producer in accordance with Producer's style guide which shall be furnished with press materials. Presenter agrees that all such materials and commercials shall be