UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE MAMMA MIA! USA TOUR 2        :    ECF CASE
LIMITED PARTNERSHIP, a New York  :
Limited Partnership,             :    06 Civ. 6079 (RCC)
                                 :
                Petitioner,    :
                                 :
  -against-                     :
                                 :
THEATRICAL ARTS INTERNATIONAL, INC. and :
THEATRICAL ARTS INTERNATIONAL    :
FOUNDATION, California corporations,    :
                                 :
                Respondents.   :
------------------------------------------------------------------------x

**RESPONDENT THEATRICAL ARTS INTERNATIONAL, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS  OPPOSITION**

BEIGELMAN & ASSOCIATES, PC
805 Third Avenue, 20th Floor
New York, NY 10022
Fax:  212-230-1090

**STATEMENT AND ARGUMENT**

This Memorandum of Law is submitted in support of Respondent's Opposition to the Petition of Mamma Mia! USA Tour 2 Limited Partnership ("Mamma Mia!") for an order compelling arbitration under the Federal Arbitration Act and enjoining Theatrical Arts International, Inc. ("Theatrical Arts") and/or Theatrical Arts International Foundation[1] from continuing a first-filed civil action in California raising the identical issues now before the Court.

This case involves a dispute arising out of the parties' failed negotiations concerning a traveling theatrical production of "Mamma Mia!" mounted in San Bernardino, California during the week of February 21, 2006. When it became clear that the parties had failed to reach a meeting of the minds concerning the essential terms of the contract, Theatrical Arts filed suit in the Superior Court of the State of California for the County of San Bernardino ("the California Action") for a declaratory judgment contesting the validity of the contract, including its arbitration clause and Petitioner was served with the summons and Complaint on August 2, 2006. (Burgee Aff., ¶2; Ex. A.). In response, Petitioner brought parallel proceedings in New York Supreme Court the next day mirroring the California Action except seeking the opposite relief: enforcement of the alleged arbitration agreement and an injunction against the California Action. (Burgee Aff., ¶ 3).

The Court should dismiss this action in favor of the California Action. The state court in California is already seized with jurisdiction to hear the dispute, including whether there exists an enforceable arbitration agreement. Indeed, a hearing has been set in the California Action for August 28, 2006 to decide whether the alleged arbitration agreement should be enforced.

---

[1] Respondent Theatrical Arts International Foundation ("Theatrical Arts Foundation") objects to this Court's exercise of in personam jurisdiction over it and will make its jurisdictional objections at the time its responsive pleading is due. Theatrical Arts Foundation has not yet made its appearance in this action except for in the Notice of Removal.

(Burgee Aff., ¶ 6; Ex. B.). The hearing was set after counsel for Petitioner appeared in the California Action and asserted Petitioner's rights under the alleged arbitration agreement. *Id.* In the interest of comity and as required under the Anti-Injunction Act, 28 U.S.C. §2283, the Petition should be dismissed in its entirety.

## I.

## **INTRODUCTION**

This case arises from the presentation of a touring performance of the musical show "Mamma Mia!" in San Bernardino, California. Mamma Mia! is the company that represents the traveling production of the show. Theatrical Arts is a production company that stages live theater productions in various venues throughout Southern California, including the California Theatre in San Bernardino. (Henson Decl., ¶3) In 2003, Theatrical Arts booked "Mamma Mia!" to play at the California Theater in February 2006. (Henson Decl., ¶ 4). At the time, Mamma Mia! had issued "deal points" representing the terms for the show to be presented by Theatrical Arts. None of the deal points included an arbitration clause; much less the agreement's governing law or the venue for hearing a dispute should one arise. *Id.*

Later, in January 2006 Theatrical Arts received a contract proposal from Mamma Mia! containing new key terms to the contract that had never been agreed upon by the parties. Among those terms was Mamma Mia!'s insertion of a new ticket pricing schedule that did not recognize the season subscriber discount that Theatrical Arts had insisted upon when the agreement was struck in 2003. (Henson Decl., ¶5). In response, Theatrical Arts changed the proposed terms of the contract to reflect the previously agreed upon deal points. *Id.* Although Theatrical Arts had not previously agreed upon the arbitration clause and choice of governing law, it left those provisions in the contract as a gesture of good faith contingent on Mamma

Mia!'s acceptance of the previously agreed upon price term reflecting the season subscriber discount. *Id.*

Theatrical Arts returned its proposed contract—or counter-offer—to Mamma Mia! in early February 2006. (Henson Decl., ¶ 6) Mamma Mia! remained silent. Theatrical Arts executed the revised contract in reliance on Mamma Mia!'s apparent acquiescence and sent the signed copy to Mamma Mia! on February 16, 2006. (Henson Decl., Ex. A..) There were no further discussions among the parties concerning the agreement. The touring production began performing "Mamma Mia!" at the California Theatre during the week of February 21, 2006. *Id.*

Three days into the performance Mamma Mia! suddenly claimed that approximately $103,000 was owed from the show's presentation. To support its claim Mamma Mia! delivered a fully executed version of the contract proposed by Theatrical Arts, except that the price term had been crossed out and replaced with the earlier rejected price term. *Id.* and Ex. B. Theatrical Arts never agreed to Mamma Mia's material changes and had no notice of the changes until Mamma Mia! demanded more money for the show's performance. *Id.* Had Theatrical Arts known of the changes it would have never allowed the show's production in San Bernardino to go forward. *Id.*

As the dispute came to a head, Mamma Mia! continued to insist that additional sums were owed and threatened to commence arbitration in New York. In response, Theatrical Arts commenced the California Action seeking a declaration, among other things, that the contract—including its arbitration agreement—was invalid and unenforceable. Theatrical Arts commenced the California Action on May 31, 2006. (Burgee Aff., ¶2).

On June 27, 2006, Mamma Mia! initiated arbitration with the American Arbitration Association ("AAA"). When the AAA held its preliminary conference on July 21, 2006

4

Theatrical Arts objected to arbitration because of the pending California Action. Shortly thereafter, Mamma Mia! commenced an action in New York Supreme Court seeking an immediate restraining order to enjoin this action and compel arbitration. The New York Supreme Court subsequently refused to enter temporary restraining orders, but issued an order to show cause with a return date of August 10, 2006. On August 9, 2006 Theatrical Arts removed the New York action to this Court and now opposes Mamma Mia!'s efforts to supervene the California Action.

## II.

## ARGUMENT AND AUTHORITIES

**A.     The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits this Court from enjoining the California Action.**

Mamma Mia!'s order to show cause asks this Court to enjoin the California Action. However, such an order would be in direct contravention of the Anti-Injunction Act ('the Act") and its prohibition against federal court interference with pending state court proceedings. The Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C.A. §2283 (1994).

The purpose of the Act is to "avoid intergovernmental friction that may result from a federal injunction staying state court proceedings." *Standard Microsystems Corp., v. Texas Instruments Inc.,* 916 F.2d 58, 60 (2d Cir. 1990). The Supreme Court has construed the Act to forbid a federal court from enjoining a party from prosecuting a state court action unless one of the three exceptions stated in the statute applies. The three exceptions are: (i) the express

provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287-88 (1970). Here, none of the exceptions apply. There is no contrary act of Congress and the injunction is not necessary either in aid of the federal court's jurisdiction or to protect or effectuate its judgments.

### 1. There is no act of Congress authorizing the requested order enjoining the California Action.

The suit at issue is to enforce an arbitration agreement under the Federal Arbitration Act ("the FAA"). Even though the FAA is a federal statute it does not give rise to federal question jurisdiction and state courts have concurrent jurisdiction to enforce arbitration agreements that fall under its scope. *See,* 9 U.S.C. §4; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32 (1983). Although the FAA represents "federal policy to be vindicated by the federal courts where otherwise appropriate," *Moses H. Cone,* 460 U.S. at 25 n. 32, it does not suggest that state courts are less competent to give effect to its provisions. *See, Zurich American Ins. Co. v. Superior Court for the State of California,* 326 F.3d 816, 826 (7th Cir. 2002); *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1180 (11th Cir. 1981) (noting that Congress "viewed state courts as fully capable of effectuating those policies"); *CIGNA Healthcare of St. Louis, Inc., v. Kaiser,* 294 F.3d 849, 854 (7th Cir. 2002) (The FAA "requires both federal and state courts to apply a federal common law of arbitrability to the arbitration of disputes arising under contracts in commerce, a common law applicable equally in federal and state courts.") (citing *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272 (1995)); *Southland Corp. v. Keating,* 465 U.S. 1, 14-15 (1984)).

Thus, courts facing the same question presented here—whether the Act prohibits a federal court from enjoining parallel state litigation faced with deciding the enforceability of an arbitration agreement—have answered in the affirmative: the Act requires federal courts to abstain from interfering with a state court's jurisdiction to hear the dispute.  *See, Zurich American Ins.* 326 F.3d 816 (state court may competently protect the parties' federal rights to enforce arbitration agreement under FAA); *TransSouth Financial Corp. v. Bell,* 149 F.3d 1292, 1297 (11th Cir. 1998) (the Act prohibits federal district court from enjoining concurrent state court proceedings already addressing the issue of arbitrabilty).  Indeed, Petitioner's argument can not be about preserving a federal interest in arbitration, but is truly about preserving a federal forum to enforce the arbitration agreement; a disingenuous assertion given that Petitioner originally brought its action in New York Supreme Court—a state venue it now opposes.  California law fully permits and has procedural mechanisms in place for enforcement of arbitration agreements.  (Burgee Aff., ¶5).  There is no claim—and no basis for asserting—that California arbitration law should be preempted by the FAA.

      **2.**    **An injunction is not necessary to protect a judgment rendered by a federal court.**

Here, there is no issue raised with regard to the second exception to the Act.  This Court has not rendered a judgment or issued an order that in any way decides the issues now pending in the California Action.  Indeed, the California Action was first-filed and a hearing on these very issues is now set in San Bernardino for August 28, 2006.  (Burgee Aff, ¶ 6; Ex. B.).  .

      **3.**    **An injunction is not necessary to aid the federal court's jurisdiction over this action.**

As discussed above with regard to the first exception, state and federal court's have concurrent jurisdiction to decide whether to enforce an arbitration agreement under the FAA.

The Eleventh Circuit has previously held this exception applicable only when an injunction is "'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *TransSouth Financial Corp.,* 149 F.3d 1292, 1297 (quoting *Atlantic Coast R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 295 (1970)). In *TransSouth* the Eleventh Circuit affirmed the lower court's refusal to enjoin concurrent state court proceedings deciding the issue of arbitrability.[2] The matter now before the Court is virtually identical and calls for the same result.

B.     **Respondent Did Not Agree to Arbitration.**

The issue of arbitrability is now properly in the hands of the Honorable Judge Dan Alvarez in the California Action. Nonetheless, even if this Court were to ignore the Anti-Injunction Act and refuse to defer to Judge Alvarez in San Bernardino, it is still clear that the parties never agreed to arbitrate this dispute. Indeed, the facts presented demonstrate that there was never a meeting of the minds on the essential terms of the contract. Accordingly, there is no agreement to enforce—arbitration or otherwise.

When considering the enforceability of arbitration provisions in contracts, courts have "distinguished contracts that were 'void' (because, for example, the parties failed to agree to essential contract terms), from those that were merely 'voidable' (for example, because of fraud in the inducement)." *Denny v. BDO Seidman*, 412 F.3d 58, 67 (2d Cir. 2005). Mamma Mia! relies upon authorities concerning compelling arbitration where the issue is whether a contract is voidable. While Mamma Mia! correctly notes that courts have found that arbitration provisions

---

[2] Of course, a very different situation is presented if the arbitrability issue has already been decided by the federal court and an injunction is issued in support of the order compelling arbitration. *See, e.g., Pervel Indus. V. TM Wallcovering, Inc.,* 675 F.Supp. 867 (S.D.N.Y. 1987), *aff'd* 871 F.2d 7 (2d Cir. 1989). Here, no court has found the underlying dispute arbitrable and compelled the parties to arbitrate. That issue is now squarely before Judge Alvarez in the California Action.

8

are severable such that a voidable contract does not preclude enforcement of the arbitration agreement, this rule does not apply in the present circumstances where the alleged contract is void. *Id.*

"A void contract is one that produced no legal obligation." *Sphere Drake Ins. v. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 31 (2d Cir. 2001). "[W]hen the parties fail to agree to essential contract terms, the agreement does not come into existence—it is void and wholly unenforceable." *Id.* This includes the contract's arbitration provision. *Id.* "To require [a party] to arbitrate where they deny that they entered into the [subject contract] would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'" *Three Valley Municipal Water District v. E.F. Hutton & Company*, 925 F.2d 1136, 1142 (9th Cir. 1991) (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 at 648 (1986)).

For the purposes of this proceeding, it is sufficient that Theatrical Arts contests the validity of the proffered contract. "[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." *Id.* at 1140-1141; *see also*, *Sphere Drake,* 263 F.3d at 32 ("a party alleging that a contract is void – and providing some evidence in support – is entitled to a trial on the contract's arbitrability"). "A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature." *Three Valley Municipal Water District,* 925 F.2d at 1140.

There is no dispute between the parties as to the genesis of the written document that Mamma Mia! claims to be a contract: Mamma Mia! changed the pricing *after* Theatrical Arts

signed the agreement and without its knowledge. Ticket pricing is an essential term of the contract. Without an agreement on price there is no contract. The admitted facts show that the parties did not agree on essential contract terms. There is thus undisputed evidence that the principal contract is void. Accordingly, the arbitration and venue clauses are also unenforceable.

### III.

### Conclusion

For the foregoing reasons Petitioner's request for entry of an order enjoining the California Action and compelling the parties to arbitrate their dispute should be in all things denied.

Dated: August 15, 2006
      New York, New York

    Respectfully submitted,

    Beigelman & Associates, P.C.

    By  /s/ Celso M. Gonzalez-Falla
    Celso M. Gonzalez-Falla (CG 4955)
    805 Third Avenue, 20th Floor
    New York, New York 10022
    (212) 230-1300
    Attorneys for Respondents
    Theatrical Arts International, Inc and
    Theatrical Arts International Foundation.