| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | ECF |

| | |
|---|---|
| THE MAMMA MIA! USA TOUR 2 LIMITED PARTNERSHIP, | )<br>)<br>) |
| Petitioner, | )  06 Civ. 6079 (RCC)<br>)<br>)  ORDER |
| - against - | )<br>) |
| THEATRICAL ARTS INTERNATIONAL, INC. and THEATRICAL ARTS INTERNATIONAL FOUNDATION, | )<br>)<br>)<br>) |
| Respondents. | )<br>) |

**RICHARD CONWAY CASEY, United States District Court Judge:**

The Court, on August 11, 2006, upon application by The Mamma Mia! USA Tour 2 Limited Partnership ("Mamma Mia"), ordered Theatrical Arts International, Inc. and Theatrical Arts International Foundation ("Theatrical Arts") to show cause on August 17, 2006 why an order and judgment should not enter compelling arbitration and "enjoining [Theatrical Arts] from maintaining or continuing any civil action against [Mamma Mia] regarding the same subject matter," including an action brought by Theatrical Arts against Mamma Mia that is currently pending in Superior Court of the State of California for the County of San Bernardino ("California Court"), Theatrical Arts Int'l, Inc. v. The Mamma Mia! USA Tour 2 Ltd. P'ship, Case No. SCVSS 138221 ("California Action"). In addition to Mamma Mia's initial application for the order to show cause, the Court has received and reviewed Theatrical Arts' opposition to that application, submitted on August 15, 2006, and Mamma Mia's reply papers, submitted on August 17, 2006. The Court heard oral argument from the parties on August 17, 2006. For the following reasons, Mamma Mia's application for an order (1) compelling Theatrical Arts to arbitrate and (2) enjoining Theatrical Arts from maintaining or continuing any civil action against Mamma Mia regarding the same subject matter is **DENIED**.

**I.    BACKGROUND**

This case involves a dispute arising out of a traveling theatrical production of the popular musical "Mamma Mia!" in San Bernardino, California during the week of February 21, 2006. Theatrical Arts booked the February 2006 production with Mamma Mia in 2003. The agreement struck between the parties at that time contained no arbitration provision. In January 2006, Mamma Mia sent Theatrical Arts a "Booking Agreement" that contained various terms and conditions, including a ticket-pricing schedule. Mamma Mia contends that Theatrical Arts had previously agreed to the ticket prices in the January 2006 Booking Agreement, but Theatrical Arts contends that the schedule ran afoul of a season-subscriber discount that Theatrical Arts had insisted upon when the production was booked in 2003. Both parties allegedly made changes to the January 2006 Booking Agreement, which also contained the arbitration provision now at issue, and the parties disagree as to whether the resulting document represents a binding contract between the parties. Mamma Mia claims that over $103,000.00 is owed from the show's February 2006 presentation in light of the prohibition against discount-ticket sales in the purported contract.

On May 31, 2006, Theatrical Arts filed the California Action to contest the validity of the purported contract. On June 27, 2006, Mamma Mia initiated arbitration with the American Arbitration Association ("AAA"). When the AAA held its preliminary conference on July 21, 2006, Theatrical Arts objected to arbitration because of the pending California Action. Theatrical Arts alleges that Mamma Mia is seeking to enforce an arbitration agreement contained in a contract that was never entered into among the parties.

On August 3, 2006, Mamma Mia commenced this proceeding in New York Supreme Court, seeking to compel arbitration and enjoin the California Action. Theatrical Arts removed this action

to this Court on diversity grounds on August 9, 2006. This action is parallel to the first-filed California Action in that the central issue of both actions—the enforcement of the purported written contract between the parties—is the same. That is, whether the parties agreed to arbitrate disputes arising from Theatrical Arts' February 2006 "Mamma Mia!" performance is an issue before both this Court and the California Court.

On August 11, 2006, this Court issued, upon Mamma Mia's application, an order for Theatrical Arts to show cause on August 17, 2006 "why an order and judgment should not be made and entered, pursuant to the United States Arbitration Act, 9 U.S.C. [§§] 1 et seq. . . . for the relief sought in [Mamma Mia's] Petition, including compelling [Theatrical Arts] to arbitrate [Mamma Mia's] Demand for Arbitration now pending before the American Arbitration Association pursuant to ¶ 17 of the parties' Booking Agreement and enjoining [Theatrical Arts] from maintaining or continuing any civil action against [Mamma Mia] regarding the same subject matter."

On August 14, 2006, the California Court held a hearing in the California Action. Mamma Mia's counsel participated in the hearing by telephone. The California Court set a hearing in the first-filed California Action for August 28, 2006 to determine whether the arbitration currently pending before the AAA should be enjoined or should proceed. Over Mamma Mia's counsel's objection, the California Court held that although the case required the application of the Federal Arbitration Act ("FAA"), the California Court could consider and apply the FAA as appropriate and had in fact done so in past cases. The California Court stated that it could and would order arbitration in New York if the court determined that it was proper. It should be noted that although Mamma Mia alleges (in this action) that service in the California Action was improper, no challenge to service has been made in the California Action.

**II.  DISCUSSION**

The Court abstains from enjoining the California Action. The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from enjoining state-court proceedings except under limited circumstances. See 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). The purpose of the Anti-Injunction Act is to "avoid intergovernmental friction that may result from a federal injunction staying state court proceedings." Standard Microsystems Corp. v. Texas Instruments, Inc., 916 F.2d 58, 60 (2d Cir. 1990) (vacating the district court's injunction of a state-court proceeding under the Act). The Supreme Court has construed the Act to forbid a federal court from enjoining a party from prosecuting a state-court action unless one of the following three exceptions stated in the statute applies: (1) provisions of another Act of Congress authorizing such an order; (2) necessity in aid of the federal court's jurisdiction; or (3) the need to protect or effectuate the federal court's judgments. Atl. Coast Line R.R. Co. v. Bhd. Locomotive Eng'rs, 398 U.S. 281, 287-88 (1970). None of the exceptions to the Anti-Injunction Act applies here.

First, there is no "express congressional authorization for injunctions in this situation." See id. at 288. This action is to enforce a purported arbitration agreement under the FAA; although the FAA is a federal statute, it does not give rise to federal-question jurisdiction, and state courts may enforce arbitration agreements that fall under the FAA's scope. See 9 U.S.C. § 4; Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983) (noting that although the FAA represents federal policy, state courts are as competent to give effect to the FAA's provisions, and "enforcement of the Act is left in large part to the state courts").

4

Further, the injunction is not necessary either in aid of this Court's jurisdiction or to protect or effectuate its judgments. Although there is a venue provision concerning arbitration in paragraph 17 of the parties' purported contract (providing that "[a]ny claims, dispute, or controversy arising out of or relating to [the booking] agreement shall be submitted to arbitration in Manhattan"), there is no provision regarding venue for any litigation or court proceedings. Mamma Mia has not challenged jurisdiction in the California Action. And to the extent that Mamma Mia argues to this Court that a federal forum should be preserved to enforce the purported arbitration agreement, that argument strikes the Court as disingenuous where Mamma Mia originally brought this action in the state-court venue of the New York Supreme Court. Likewise, there is no judgment of this Court in this matter to protect or effectuate.

### III. CONCLUSION

Because the Court will not enjoin the first-filed California Action, and because the California Court has set a hearing in the California Action for August 28, 2006, the Court will stay this action awaiting the California Court's determination. Mamma Mia's application for an order compelling Theatrical Arts to arbitrate and enjoining Theatrical Arts from maintaining or continuing any civil action against Mamma Mia regarding the same subject matter is **DENIED**. The parties are to notify the Court of the status of this case after the California Court has made its decision, at which point the Court will schedule a status conference to determine if and how the matter before this Court should proceed.

**So Ordered:**  New York, New York
August 17, 2006

_Richard Conway_
Richard Conway Casey, U.S.D.J.